UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                              :
KLIPSCH GROUP, INC.,                          :
                                              :          11 Civ. 9187 (PAE)
                          Plaintiff,          :
                                              :          OPINION & ORDER
            -v-                               :
                                              :
SHENZHEN SOSOUND et al.,                      :
                                              :
                          Defendants.         :
                                              :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

      Defendant FocalPrice, Inc. ("FocalPrice") moves this Court to vacate the consent judgment entered on October 23, 2012, *see* Dkt. 38–40, pursuant to Federal Rule of Civil Procedure 60(b)(1) and (6), and to restore the above-captioned matter to the Court's docket. Plaintiff Klipsch Group, Inc. ("Klipsch") opposes FocalPrice's motion. *See* Dkt. 42. For the reasons that follow, FocalPrice's motion is denied.

**I.    Background**

      On December 15, 2011, Klipsch filed a complaint against 20 defendants, including FocalPrice, for trademark counterfeiting, trademark infringement, unfair competition and false designation of origin, and for state-law claims of unlawful and deceptive acts and practices. Dkt. 1, 11. The complaint also included an *ex parte* application for, *inter alia*, a temporary restraining order, an asset restraining order, and an order to show cause for a preliminary injunction hearing. On January 5, 2012, the Court held the preliminary injunction hearing. Counsel for FocalPrice appeared and agreed to a stipulated preliminary injunction on consent, which the Court entered on January 10, 2012. Dkt. 6.

On March 26, 2012, FocalPrice entered into a settlement agreement and stipulated consent agreement with Klipsch. Because the other defendants failed to appear or answer, on August 7, 2012, the Court entered a default judgment and permanent injunction against them. Dkt. 34. On October 23, 2012, the Court entered a permanent injunction and judgment on consent as to FocalPrice. Dkt. 36.

FocalPrice now argues that the consent judgment should be set aside as unconscionable, pursuant to Federal Rule of Civil Procedure 60(b)(1) and (6), because FocalPrice "consented to the Judgment based on a total misapprehension of the law and its exposure under the American legal system." Memorandum of Law of FocalPrice Inc. in Support of Its Motion to Vacate Consent Judgment (hereinafter "FocalPrice Br.") 6, Dkt. 39.

## II.    Applicable Legal Standard

Rule 60(b)(1) states that a court may "relieve a party . . . from a final judgment . . . for . . . mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1).[1] The Second Circuit has held that, although Rule 60(b) "should be broadly construed to do substantial justice[,] . . . final judgments should not be lightly reopened. . . . Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (citations omitted).

Rule 60(b)(1) governs the situation where, as here, a party argues that its counsel either misadvised it or failed to appreciate the consequences of a bargained-for agreement. The Second Circuit

---

[1] Rule 60(b)(6) authorizes vacation of a judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). FocalPrice does not concretely explain what reason it has, other than the grounds on which it pursues relief under Rule 60(b)(1), for relief from the judgment in this case. The Court nevertheless considers FocalPrice's entitlement to relief under both subsections here. *See infra* p. 6 n.4.

> ha[s] consistently declined to relieve a client under [Rule 60(b)(1)] of the burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or other rules of the court, or his inability to efficiently manage his caseload. This is because a person who selects counsel cannot thereafter avoid the consequences of the agent's acts or omissions. Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief.

*Id.* at 62 (citations omitted). And, as the Second Circuit has noted, when parties agree to a disposition of a case without proceeding to trial, "the burden to obtain Rule 60(b) relief is heavier." *Id.* at 63. In other words, "[w]hen a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994).

### III.     Discussion

FocalPrice argues that the $800,000 which it agreed to pay Klipsch was unconscionable, because, it claims, that sum was "315 times more in damages to Klipsch than Klipsch was entitled to be paid under the Lanham Act." FocalPrice Br. 6. According to FocalPrice, "at the time FocalPrice agreed to the consent judgment, it understood that there was a substantial probability that it would be held liable, under American law, for $6 million [which] would have resulted in the liquidation of its business." *Id.* at 5. But FocalPrice states that belief reflected a "misunderstanding of its rights and liabilities, including its potential exposure under the Lanham Act." *Id.* at 7. FocalPrice explains that it also agreed to settle because it "could not survive with [the] restraining order [sought by plaintiff] in place," *id.* at 6, but that it now believes the Court would have reduced the amount of funds restrained "had FocalPrice presented the evidence of its sales to the Court," *id.* at 8.

The Lanham Act allows a plaintiff to elect to recover either actual or statutory damages— the latter being "(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of

3

goods or services sold, offered for sale, or distributed, as the court considers just; or (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117.  FocalPrice claims that it, and its attorneys at the time, mistakenly believed that, under the statutory damages provision, it could potentially face $6 million in damages.  *See* FocalPrice Br. 11; Declaration of Zhifeng Zhang (hereinafter "Zhang Decl.") at ¶¶ 12, 16–17.  In fact, FocalPrice argues, it is now "eminently clear" to FocalPrice "that there was no realistic possibility that the Court would impose a $2 million penalty for an infringement that resulted in a profit to FocalPrice of $2,543.65."  FocalPrice Br. 12.

The parties vigorously dispute whether, in fact, FocalPrice faced potential damages exceeding the $800,000 for which it settled.  FocalPrice cites several cases from this district in which statutory damages in far smaller amounts were awarded, even where there had been multiple acts of infringement and where defendants had failed to cooperate.  *See* FocalPrice Br. 14–18.[2]  FocalPrice argues that its situation compares favorably to that of the defendants in those cases, because it acted in good faith.  First, it states, "[u]pon notice of the litigation, it immediately ceased the sales of the infringing products and fully cooperated in discovery." *Id.* at 15.  Second, FocalPrice asserts, it admitted to sales of more Klipsch headphones (361) than were known to Klipsch (1).  FocalPrice Reply Br. at ¶ 4.

---

[2] *See Coach, Inc. v. O'Brien*, No. 10 Civ. 6071 (JPO)(JLC), 2012 WL 1255276, at *3-4 (S.D.N.Y. Apr. 13, 2012); *GMA Accessories, Inc. v. Solnicki*, No. 07 Civ. 3219 (PKC), 2011 WL 4790615, at *2 (S.D.N.Y. May 23, 2011); *Chanel, Inc. v. Gardner*, No. 07 Civ. 6679 (GBD)(MHD), 2011 WL 204911, at *4 (S.D.N.Y. Jan. 21, 2011); *Malletier v. Artex Creative Int'l Corp.*, 687 F. Supp. 2d 347 (S.D.N.Y. 2010); *Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 505 (S.D.N.Y. 2009); *Gucci Am. Inc. v. Gold Ctr. Jewelry*, 997 F. Supp. 399, 401 (S.D.N.Y. 1998).

Klipsch responds by relying on a different line of cases—ones in which courts have awarded statutory damages that approach the maximum provided for by the Lanham Act. *See* Klipsch Br. 4.³ On the basis of this authority, Klipsch argues, FocalPrice's counsel at the time reasonably concluded that FocalPrice "might face significant exposure to statutory damages based on its sale of counterfeits of Klipsch's products." *Id.* Moreover, Klipsch argues, even if FocalPrice's counsel had misapprehended the extent of FocalPrice's potential liability, that would not be grounds for vacating the consent judgment. Klipsch notes the Second Circuit's admonition that attorney ignorance or omission, "whether arising from neglect, carelessness or inexperience, [is] attributable to the client, who has a duty to protect his own interest by taking such legal steps as are necessary." *Nemaizer*, 793 F.2d at 62 (citing *Ackermann v. United States*, 340 U.S. 193 (1950)).

On balance, the Court agrees with Klipsch that the consent judgment is not properly vacated. To be sure, FocalPrice has certainly demonstrated that, in hindsight, its decision to enter the consent judgment may have been ill-advised or reflected undue risk-aversion. It is certainly possible, as FocalPrice posits, that had FocalPrice "simply ignored the injunction," it ultimately would have paid less than it did under the consent judgment. FocalPrice Br. 18.

FocalPrice's regrets—and its claim that its attorney gave it errant advice—do not, however, constitute grounds for vacating the judgment to which FocalPrice consented. The circumstances which FocalPrice proffers fall squarely within the bounds of attorney ignorance or mistake, and the Second Circuit has held that an attorney's errors do not normally constitute

---

³ *See Coach, Inc. v. Allen*, No. 11 Civ. 3590 (CM), 2012 WL 2952890, at *9–11 (S.D.N.Y. July 19, 2012); *Rolex Watch, U.S.A., Inc. v. Pharel*, 09 CV 4810 (RRM)(ALC), 2011 WL 1131401, at *5–6 (E.D.N.Y. March 11, 2011), *report and recommendation adopted by* 2011 WL 1130457 (E.D.N.Y. Mar. 28, 2011); *Louis Vuitton Malletier and Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583–84 (E.D. Pa. 2002).

grounds for vacating a judgment under Rule 60(b)(1).  *See Canfield v. Van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250 (2d Cir. 1997); *Neimazer*, 793 F.2d at 62–63 (collecting cases); *United States v. Erdoss*, 440 F.2d 1221, 1223 (2d Cir. 1971); *Alvarado v. Manhattan Worker Career Ctr.*, No. 01 Civ. 9288 (CBM), 2003 WL 22462032, at *2–3 (S.D.N.Y. Oct. 30, 2003); *Cobos v. Adelphi Univ.*, 179 F.R.D. 381, 386–87 (E.D.N.Y. 1998).[4]  And FocalPrice expressly blames its attorneys' ignorance for its decision to settle: "Given its lack of knowledge of United States laws, FocalPrice deferred to its attorneys and assumed they would research American law, evaluate its position, and advise it appropriately." FocalPrice Br. 4.

Furthermore, although FocalPrice's attorneys may well have overestimated its potential liability and too timidly capitulated to the terms of the settlement, the record at hand does not foreclose the possibility that the case would have resulted in a judgment exceeding $800,000. Klipsch rightly points out that there was no discovery taken as to FocalPrice's sales. Klipsch Br. 4.  And the record is also underdeveloped as to whether other factors that could have supported high-end statutory damages were present or discoverable.  It is also possible that litigating this matter, involving as it did overseas defendants, would have imposed high costs and burdens on FocalPrice which the consent judgment obviated.  Counsel for FocalPrice bargained for the

---

[4] The same is true under Rule 60(b)(6), under which a similar or more stringent analysis applies. Relief under Rule 60(b)(6) requires "extraordinary circumstances" or "extreme and undue hardship." *Pichardo v. Ashcroft*, 374 F.3d 46, 56 (2d Cir. 2004) (citations omitted).  And it is "well-settled in the Second Circuit that an attorney's gross negligence alone is not a basis for relief under Rule 60(b)(6).  As such, to constitute 'extraordinary circumstances' under Rule 60(b) (6), a lawyer's failures must be so egregious and profound that they amount to the abandonment of the client's case altogether, either through physical disappearance or constructive disappearance." *FirstStorm Partners 2 LLC v. Vassel*, No. 10-CV-2356 (KAM)(RER), 2013 WL 654396, at *16 (E.D.N.Y. Feb. 21, 2013) (citing *Harris v. United States*, 367 F.3d 74, 81 (2d Cir.2004)). Notably, Rule 60(b)(6) only applies in situations not cognizable under the first five subsections of Rule 60(b), which is not the case here. *Neimazer*, 793 F.2d at 63; *Erdoss*, 440 F.2d at 1223; *Saunders v. Goord*, No. 98 Civ. 8501 (JGK), 2007 WL 1434974, at * 2 (S.D.N.Y. May 15, 2007); *Long v. Carberry*, 151 F.R.D. 240, 244 (S.D.N.Y. 1993).

benefit of certainty and closure. Rule 60(b) does not exist to save a party from its—or its counsel's—ignorance, timidity, or buyer's remorse.

That said, on the facts proffered, FocalPrice may conceivably have a different remedy—in the form of a legal malpractice claim against the counsel who advised it to settle. The Court expresses no views as to the merits or advisability of bringing any such claim.

## CONCLUSION

For the foregoing reasons, FocalPrice's motion to vacate the consent judgment and to restore this matter to the Court's docket is denied. The Clerk of Court is directed to terminate the motion at docket number 38.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: April 5, 2013
       New York, New York